JOSIAH T. BUDD, EXECUTOR OF WILLIAM BUDD, DECEASED, APPELLANT, VS. ROBERT GAMBLE, JR., APPELLEE.

When the defendant answers a bill in equity, reserving the questions of law, and at the final hearing the court is of opinion that there is not such a case made by the bill as will warrant relief, the bill should be dismissed. Judgment was entered in the county court in 1842, upon a promissory note made by defendant. No legal service of the summons was made upon defendant; but an unauthorized attorney entered an appearance for defendant at the return of the summons, and defendant alleges that he had no knowledge of the existence of the judgment until twenty years after it was entered; after which the judgment was revived by *scire facias*, and execution issued and levied upon defendant's property. Upon bill filed by defendant in 1868, alleging these facts, and seeking to enjoin the enforcement of the judgment, but failing to show that the defendant had a legal or equitable defence against the note sued on; *Held,*

1. That where the statute of limitations has intervened as to an action upon the note, equity will not relieve against a judgment upon the ground that the appearance of the attorney, upon which the judgment was based, was unauthorized; the party must show, under such circumstances, fraud, or a meritorious defence as well as irregularity.

2. A plaintiff cannot be held to inquire into and ascertain whether an attorney, who, in open court, upon the calling of the docket, enters an appearance for a defendant, is duly authorized to appear.

18

This is an appeal in Chancery from the Circuit Court for Jefferson county.

Robert Gamble, appellee, filed his bill in equity in the Circuit Court of Jefferson county, in January, 1868, against the appellant, alleging that a judgment rendered against him on the 26th September, 1842, in the county court of that county, was revived by *scire facias* in the Circuit Court in May, 1867, and an execution had been issued thereon, and a levy made upon his property and certain funds attached by garnishment. The original judgment was rendered for $113.90 and costs. The complainant alleges in the bill that he had no knowledge of the existence of the judgment until about twenty years after it was rendered, when William Budd ordered a levy to be made upon his property, but on complainant bringing the circumstances to his notice, Budd stayed all proceedings, and the matter there dropped for the time.

That an examination of the original summons shows that the sheriff returned the same executed by "leaving a copy thereof at the residence of Robert Gamble, Jr., in care of a person of lawful age, March 18, 1842;" that at that time he did not reside in Jefferson county; that the judgment was obtained by default, as shown by the record entry of the judgment; "that the note upon which the judgment was based has been paid and satisfied in full, and that the judgment was fraudulently and illegally obtained;" that in 1838, he made certain promissory notes to William Budd, Treasurer of Jefferson Academy, or his successors or bearer, while acting as agent for his father in renting certain land, and that a transfer of the land was subsequently made to one Edwards, "whereby Edwards was to substitute certain other notes in place of those of your orator;" that he can show that at the time the judgment was rendered, Budd had no valid claim against him; that the declaration does not allege any transfer of the note to Budd, and the judgment should have been rendered in favor of Budd, as Treasurer,

&c., and is now the property of his successor and not of his executor; that complainant has had property in this State out of which the judgment might have been collected, but it was allowed to remain twenty years without attempting to collect it, and only since the death of Wm. Budd "his heirs have found this record which Wm. Budd had neglected to mark satisfied, but which was paid and discharged years ago"—all which is said to be contrary to equity and good conscience, wherefore the complainant prays an injunction against Budd, executor, &c., and the sheriff, and for general relief.

The answer alleges, after claiming and reserving the benefit and advantages he may have by way of plea or demurrer, that the complainant, by his attorney, D. C. Wirt, entered his appearance in the suit in the county court, and that the same appears of record, and that he suffered a judgment *nil dicit* to be entered against him; denies that the complainant can now, after over twenty years, inquire into the regularity and validity of the judgment; denies that the note or the judgment has ever been paid or satisfied; alleges that the note was the property of Wm. Budd; denies that any arrangement was ever made by which the note was to be exchanged for the note of Edwards, and that the statements in the bill in regard to these matters are untrue.

The complainant filed the general replication. Upon this, testimony was taken by the complainant, (under the objections and exceptions by the defendants,) and the Circuit Court decreed a perpetual injunction.

The defendant appealed.

*A. L. Woodward, Sr.*, for Appellant.

I. *Equity Pleading and Practice.*—A defendant in chancery, by reservation in his answer, may have the same benefit he would have been entitled to by adopting the more concise mode of demurring or pleading, where vital defects exist in the merits of the case.

2. Where a case is clearly cognizable at law, or destitute of equity, the answer reserving questions of law, the bill should be dismissed at the final hearing, if it does not present a case entitled to relief. 2 Dan. Chy. Pl. and Pr., 819; 6 Eng., 419–22.

3. The appellant having protested in his answer against the appellee's right to relief in chancery, after neglect of opportunity of a purely legal defence at law, it is therefore respectfully submitted whether appellant may not claim the benefit of demurrer or plea, under the general introductory reservation of his answer, as well as he might have under special reservation addressed to demurrable matter of the bill.

II. *Effect of Appearance.*—The appearance of an attorney in a case is binding on the defendant, even though unauthorized, or not specially retained.

2. The entry of attorney's name on the docket is an appearance for the defendant, and renders him subject to the judgment.

3. Judgments are not merely *prima facie* evidence of their validity, but conclusive, and parties are estopped by the record from denying their obligatory force.

4. The presumption is in favor of the regularity, and in support of the judgment of the court below.

5. If there is counsel present, unprepared, a motion for a continuance, or for a new trial, is the proper remedy. 1 Ala., (O. S., 1824,) 31; ib., 44; 2 Stew., 515; 3 Port., 262; 6 Port., 352; 6 Johns., 296; 8 S. & M., 421, 26 to 30.

III. *Relief in Equity.*—When the jurisdiction of a court of law has once attached to a cause, its decision is final as to all matters within its cognizance, and operates as a bar to its litigation in the same or any other tribunal. Hence no degree of wrong or injury in the determination of a case at law will entitle the injured party to resort to equity, unless there is some special ground for its interposition—such special

ground consisting of matter unavailable at law. 2 Story's Eq., 16 Ga., 398 ; 3 Lead. Cases in Eq., 181.

2. The general rule is, that the estoppel of a judgment extends to all points involved in the cause, though in fact left undetermined. 1 Baily's Eq., 107 ; 2 Smith's Lead. Cases, 669 ; 3 White & Tudor's Lead. Cases, Hare & Wallace's notes, 182.

3. A party cannot ask for relief in equity on the ground that he has omitted or failed to make a defence at law. Ib., 183, and authorities cited.

4. This rule is absolutely inflexible, and cannot be violated, even when the judgment in question is manifestly wrong in law, or in fact ; or when the effect of allowing it to stand will be to compel the payment of a debt which the defendant does not owe, or which he owes to a third person, or which has in fact been discharged. Ib., 183.

5. Nothing is better settled, in general terms, than that a judgment will not be restrained by injunction on grounds purely legal, unless a defence has been prevented at law by fraud on one side, or ignorance, unmixed with negligence, on the other ; and when this is not the case, no degree of hardship or injustice, which can result from allowing the judgment to stand, will justify the intervention of equity to set it aside. Ib., 195.

6. Nor will the ignorance or misapprehension of the defendant, or his attorney, justify interference with a judgment to which he has assented, however clear the evidence that a case has been sacrificed, which might have been successfully prosecuted or defended. Ib., 194, authorities cited. Cases granting injunctions in conflict with these rules, must be regarded as anomalies, and not merely exceptions.

7. Even in cases of undue advantage taken on one side, resulting in injustice on the other, relief must be based even more emphatically than in others of the same nature, upon a distinct allegation of fraud in the bill, (How. Miss., 132, 4 How. Miss., 132, 4 Ga., 175,) and will not be granted in

opposition to a distinct and explicit denial in the answer. 1 S. & M., 108; 12 S. & M., 538; ib., 199.

8. Moreover, a judgment will not be set aside in chancery on the ground of having been improperly or even fraudulently obtained, unless the defendant can show that he has a defence which would be good if not precluded by judgment. 8. Vt., 18; 23 Vt., 720. It was said, in Mason vs. Sneadley, although the judgment has been obtained in such a manner that it ought not to bind the complainants, yet it would be useless to interfere, if the debt for which it is rendered be just and equitable, so that if it were set aside, a court of law would be compelled to render a like judgment. Ib., 200.

*Selected Cases.*—1 Ark., 186, 195, 196; 7 Eng., 401, 413, 414, 416, 417; 14 Ark., 360; 10 Gratt., 506, 510, 511, 512; 24 Vt., 351, 352, 353; 1 J. J. Mar., 272, 273, 274; 8 Ala., 767, 769, 770; 2 Stew., 312, 313, 314.

*R. B. Hilton* on same side.

As between the parties, the return of the sheriff is conclusive upon all matters returned, and cannot be contradicted by such parties or their privies. 45 N. H., 124.

The return of the sheriff cannot be traversed, except for fraud or collusion. 28 Ga., 496.

Where attorney appeared, though without authority, and defendant was never served with summons, a court of chancery will give no relief, unless the attorney is shown to be insolvent. 37 N. H., 512; see, also, 10 S. & M., 563.

As to authority of attorney and conclusiveness of record, see 5 Dana, 11.

The presumption will be made after twenty years in favor of every judicial tribunal acting within its jurisdiction, that all persons concerned had due notice of its proceedings. 1 Greenl. Ev., sec. 19; 4 How., 161.

The looseness of the statements in the bill, and the laches of the complainant, are conclusive objections to granting the

Budd vs. Gamble—Argument of Counsel.

relief sought.   6 Fla., 347 ; Hilliard on Injunc., 29, 30, 31 ; 22 Ga., 127 ; 5 Cald., 371 ; 21 Barb., 129 ; 2 Min., 239.

A judgment will not be set aside in equity on the ground it has been fraudulently or improperly obtained, unless the complainant is able to show that he has a defence which would be good if not precluded by the judgment. 11 Wis., 391 ; 23 Vt., 720.

Nor is there such averment of fraud as would authorize the interposition of chancery.   7 Eng., 401.

Judge Story (2 E. Ju., sec. 898,) says :   "Courts of equity will not grant an injunction to stay proceedings at law merely on account of any defect of jurisdiction of the court in which the proceedings are pending ;" citing, as for example, in the note, " As where no process had been served on the defendant."   8 Ala., 500, 767.   To the same point, see note to Adams' Equity, side p. 198 ; 11 Wis., 391.

The case in 11 Humphreys (and one or two kindred cases cited on the other side,) are " anomalies "—so pronounced in American Notes to Lead. Eq. Cases, p. 197.

Suits on judgments, obtained in courts where rendered, to be distinguished from suits on judgments of other States. 8 S. & M., 428 ; 2 Am. L. Cases, 719–15.

*S. Pasco* for Appellee.

The judgment being by default, we have a right to look into the regularity of the proceedings of plaintiff in the cause.   1 Fla., 378 ; 1 Robinson's Pr., 261.   The mode of service of the original writ is before the court in complainant's bill of complaint, which was "*by leaving* a copy thereof at the residence of Robert Gamble, Jr., in care of a person of lawful age."   The mode of service is prescribed by statute of November 23, 1829.   When service is perfected thereunder by leaving at the residence, it must be left " with some person of the family above the age of fifteen years, and informing such person of the contents thereof."   It does not appear

from the sheriff's return, that the said copy was left with any member of complainant's family, nor that the sheriff took the pains to inform the person with whom he left it as to its contents; and it appears from the testimony adduced that the complainant was a non-resident of the county at the time, so that, without disputing the record at all, it does not of itself show any legal service. This fact of non-residence is not denied by defendant in his answer to the bill, but he rests upon the appearance entered by Mr. Wirt, and claims that it cures all prior defects. This, of course, would be true, if Mr. Wirt had authority to act for the appellee, but the testimony proves that he had no authority at all; that there was no privity between them, and there would be no equity in binding a party by a judgment which derives all its validity from the action of a third party, against whom it was rendered. The law even goes so far as to say that if an attorney appears for his client without a warrant, that the judgment, under some circumstances, shall not stand, as where the attorney is not responsible, so that if the attorney exceeds his authority, his client is not necessarily bound thereby; and even if, in the present case, the relation of attorney and client had existed between said Wirt and appellee, there would be strong reasons for the interposition of a court of equity. The mistake of said Wirt, and the fact that the appellee has no relief for the injury done by action against said Wirt, he being without the jurisdiction of the court, no longer one of its attorneys, and the act being covered by the statute of limitations, so that said Wirt is not responsible. Jacob's Law Dic., art. "Attorneys at Law," reference to 1 Salkeld, 88; 1 Tidd's Pr., 107; 1 Bacon's Abr., 296; 2 Yeate, 546.

Where the attorney makes an unauthorized appearance, the general rule is, that it cannot bind the party he pretends to represent, and this was the ruling of the court below, though the books are filled with decisions where relief was refused at law upon these grounds. 6 Johns., 34; 7 Har.

& J., 275 ; 5 Har. & J., 478 ; 2 Har. & Gill, 374 ; 6 Johns., 296 ; 1 Tyler, 304 ; 7 Pick., 137 ; 4 Mo., 228 ; 4 Dev. & Bat. N. C., 454 ; 9 Shep., 128 ; 3 Green, 224 ; 6 Blackf., 123. It remains for us to inquire what remedy the appellee has against this wrong and injustice.   The appellant, in his first error assigned, points us to a court of law, and says we have had an opportunity of full defence and adequate relief there. Surely not in the original suit in the County Court, for the appellee was a stranger to the proceedings there.   Could this defence have been presented at the revival of the suit by *scire facias*, it might perhaps have been reached then, had the record shown no service and no appearance upon its face.   But all is apparently regular.   The judgment was voidable, but not void, and until vacated, it was valid ; and the court, in re-affirming it upon the proceedings in *sci. fa.*, re-affirmed it with all the original equities against it.   It prolonged the former existence—it did not create anything anew.   Such has been the language of this court hitherto, and this language has directed and controlled the courts of this State.   2 Fla., 165, reference to 2 Sellon's Pr., 187–88 ; Jacob's Law Dic., *scire facias*.   An established English authority, in defining this writ, says : "By the statute it is ordained in lieu of a new original, and therefore judgment upon the *scire facias* shall have the same effect as upon that."   Again : "Though the judgment was void, yet execution might be by *scire facias*.   For upon a voidable judgment a man shall recover and may take out execution, and that it should stand good until the judgment was reversed." Ref. to God., 96.   In a recent case decided in England, the court ruled that it "cannot refuse to issue a *scire facias* to obtain execution on the ground that the judgment is erroneous on its face."   Law Rep., 2 Ex., 284, reported in 3 Am. Law Rev., 123.

The Virginia courts have ruled that "a judgment suspended by an injunction, may be revived on the death of either party ; and the injunction operates on the judgment

or *scire facias*, prohibiting the issue of execution thereon." 11 Gratt., 190, quoted in Hilliard on Injunc., 226. The decision of the Arkansas Supreme Court, in the case of Pile *ex parte*, seems to conclude the matter : " A void judgment by *scire facias* does not make it valid, though the defendant appear and plead to the writ." 9 Ark., or 4 Eng., 336. The language of the Georgia Supreme Court, and others, (22 Ga., 127, Hilliard on Injunc., 202,) indicates that the application for relief should be made in a court of equity. The judgments of courts cannot be lightly interfered with, and it is only when strong equitable grounds are presented that relief will be there afforded. Hilliard on New Trials, 460, p. 20, and 463, p. 25 ; 30 Ala., 352 ; 11 Hump. Tenn., 523 ; 1 Head Tenn., 229 ; same in H. on Injunc., 190, p. 30, and 200, p. 43 ; 16 Ala., 95 ; 6 How., 186 ; 6 Pick., 239–40 ; 5 Cald., 371 ; 6 Littel, 186 ; 8 Ala., 745 ; 2 Am. L. C., 787. Even if the case now presented would have entitled the party to relief at law, it was not available at the return of the *scire facias* ; the bill is based upon the surprise in the pleadings. The appellee there alleges that " he had no knowledge of the existence of the said judgment until about twenty years after it was rendered ;" that when the matter was at last brought to his notice, he brought the circumstances to the notice of appellant's testator, who voluntarily stayed all proceedings ; that appellant, 'after his testator's death, brought the matter up again, and when the appellee was brought into court, nearly twenty-five years after the alleged suit, it is no matter of wonder that he found it impossible. to make a defence, as he alleges, even if it could have been there made. Even when he filed his bill, in January, A. D. 1868, he had not been able to·meet the matter fully, for the witness upon whom he principally relied lived in a remote State, and had to recall circumstances a quarter of a century old. It is difficult to determine what is meant by the second error assigned. There is no ignorance nor misapprehension of the attorney who entered an appear-

ance in the proceedings under the *scire facias* in the Circuit Court, alleged in the bill or answer. If it is intended to refer to the mistake of the attorney whose name was entered upon the docket in the County Court, we claim that no man can be concluded by proceedings to which he is a stranger; or, in the words of C. J. Marshall, "it is a principle of natural law of universal obligation, that before the rights of an individual can be bound by a judicial sentence, he shall have notice, actual or implied, of the proceedings against him." 1 Greenl. Ev., p. 22; 3 Peters' Cond. Rep., 306; 9 Cranch, 126.

In reply to the third error assigned, the appellee urges that it is hard to prove the payment of a claim more than a quarter of a century old. The presumption of law is against a stale demand, and the conduct of appellant's testator has favored this presumption. He could and doubtless would have collected this claim during the long period that intervened between the rendition of his judgment and his death, had he been satisfied that it was a just one. This presumption is further strengthened by the oath of the appellee in his bill, and the affidavit filed with the bill, and the denial of the appellee of a fact which was not within his own knowledge amounts to nothing. There is, then, every reason to believe that upon a full trial at law, the claim could not have been sustained.

There is no law authorizing the prosecution of a claim against a man without notice to him, and of entering up a judgment against him without his knowledge, and allowing the party interested to keep his judgment a secret for twenty years, and then surprising the party thus sued with a stale demand that has nearly passed out of his mind; and if such proceedings have gone on under the name of law, equity will interfere to prevent the collection of such a claim, for it follows the law, not blindly, but with corrective powers, and where fraud has wrested the law so as to work injustice in

its name, equity will come to the aid of the law and strip the wrong doer of the advantage he has unjustly gained.

RANDALL, C. J., delivered the opinion of the Court.

It is a fundamental maxim in courts of equity as well as of law, that no proof can be admitted of any matter which is not noticed in the pleadings ; and also that the complainant must state a case in his bill which entitles him to relief, or he can have no decree in his favor. He must introduce into his bill every material fact which he intends to prove. Daniel's Ch. Pl. and Pr., 850. And it is said farther, " with respect to claiming the same benefit by answers that the defendant would be entitled to, if he had demurred to the bill, or pleaded the matter alleged in his answer in bar, it is to be noticed that it is only at the hearing of the cause that any such benefit can be insisted upon ; but that at the hearing of the case the defendant will in general be entitled to the same advantage of this mode of defence that he would have had if he had adopted the more concise mode of defence by demurring or pleading." Ib. Where the defendant answers the bill, reserving the questions of law, if at the final hearing the court be of opinion that there is not such a case made out by the bill as will warrant relief, the bill should be dismissed. Meux vs. Anthony, 6 Eng., 411.

The bill in this case states that the complainant " had no knowledge of the existence of the judgment" until twenty years after it was rendered, and that the return upon the summons does not show a legal service upon him. All this may be true. The return certainly does not show a proper service and does not confer jurisdiction of the person of the defendant. But notwithstanding all that is alleged, the judgment may be regular and binding upon the complainant, for he nowhere states in his bill that he did not appear to the action in person or by attorney. The fact that he resided in another county is of no importance, as the indebtedness occurred in Jefferson county. To entitle himself to

Budd vs. Gamble—Opinion of Court.

defend against the judgment, he should have shown in his bill not only that he was not served, or had no notice of the institution of the suit, but that he did not appear therein in person or by attorney; but as he denies only the regularity of service and his residence in the county where the suit was brought, he leaves it open to the legitimate inference that he appeared to the action, and in this he fails to allege any defect in the jurisdiction of the County Court. Moreover, the answer expressly alleges that the complainant did appear to the action in the County Court by his attorney and said nothing in bar of the action. Instead of amending his bill in this particular and impeaching the authority of the attorney who appeared for him, (if one did appear,) he merely filed a general replication insisting upon the matters alleged in his bill, and denying generally the allegations in the answer.

The only matters set up in the bill which could be held to make a case of merit, independent of the question of the want of jurisdiction, is a general allegation of payment, and this allegation is explained in the bill itself to be the conclusion of the complainant, drawn from the alleged fact that he had arranged with Edwards to surrender to him certain leased lands, for the rent of which the note had been given, and that "Edwards was to substitute other notes in the place of the complainant's." There is no allegation that such substitution was made. The bill does not set up that Budd had any notice of such agreement, or of any fact by which his rights could in any respect be affected by an agreement between Edwards and Gamble.

We assent to the doctrine that where the statute of limitations has intervened, equity should not relieve against a judgment at law upon the ground that the appearance of an attorney, upon which the judgment was based, was unauthorized. The plaintiff must show under such circumstances merits as well as irregularity.

A plaintiff cannot be held to inquire into and ascertain

whether an attorney's appearance is authorized, whenever in open court upon the calling of the docket, an attorney enters an appearance. Where the statute of limitations intervenes and equity enjoins the judgment upon this ground, the clear result is to make the plaintiff lose, when he certainly was not in fault. The very least that should be required would be to show insolvency of the attorney, and while the question is not necessarily involved in this case, we think that merits as well as insolvency should be shown where the statute intervenes.

The issues of fact in this case were upon the matters contained in the bill, which, as we have seen, fails to present a material issue, and it is therefore unnecessary to look at the proofs for the purpose of disposing of the case. See St. Andrews Bay Land Company vs. Campbell, 5 Fla., 560.

We are disposed, however, to look further into the record for the purpose of determining whether the complainant may not, by amending his bill, present such a case as will entitle him to relief. No facts are charged which show any fraud or collusion in the matter.

In his testimony the complainant swears that the first intimation he received of the institution of the suit was in 1862, when the sheriff of Leon county informed him that he had been directed to levy upon his property; that he never knew that Budd had any valid claim against him; "that the note on which the suit was brought, was one of several given to the Commissioners of the School Fund of Jefferson county, for the rent of certain lands for a term of years, that by the consent of the Commissioners the notes were retired, being substituted by those of John A. Edwards, to whom they transferred the lease, and he was of the *impression* that all of his notes had been cancelled."

This is the evidence relating to the *payment* or discharge of the note. He remembers the transaction and that an arrangement was made, but that this note was included he has only an impression, and we cannot say that this proves

either an averment that the note was paid, or that it was discharged in any way.

The complainant also testifies, (and is supported by the attorney, Wirt,) that he never employed Wirt to appear for him, and Wirt says that he entered his appearance in the suit under a misapprehension, supposing the suit to be against another person of the same or a similar name.

The preponderance of authority leads us to the conclusion that in cases like this the court will not interfere and enjoin the judgment unless fraud is disclosed in the proceedings, or unless the party shows clearly that he has been unfairly deprived of the opportunity of making a valid defence upon the merits, or that it would be " against conscience" to execute the judgment. There can be no precise rule laid down which should control all cases of similar or proximate general character. This remark is justified by an examination of the decisions of various courts in analagous cases.

The courts do not sustain judgments entered against defendants without notice and without appearance ; such proceedings do not bind defendants on account of the defect of jurisdiction over the person. In cases like the present, however, where it appears that an unauthorized attorney has appeared for a party, and the appearance has not been subsequently adopted by him, some courts have relieved against the judgment entered without regard to any other circumstances. Without exception, we believe, the cases in which this relief has been granted show that the application has been made very soon after judgment rendered. In general, however, the party has been held by the judgment and referred to the unauthorized attorney for redress, unless the attorney was insolvent or a " suspicious person." But courts of chancery have in such cases very uniformly allowed the defendants to show a fraudulent collusion between other parties and the officers or attorneys in obtaining the judgment, or to show that he had a meritorious defence, of which he was deprived by fraud, or accident, or mistake, and that it

would be " against conscience" to execute the judgment, and upon this to grant relief.

Here, the complainant had executed a negotiable promissory note, upon which the judgment was rendered twenty-eight years ago. To grant unconditional relief upon the showing that the attorney who appeared for him had no authority to appear, would be to relieve him from the payment of his debt if the statute of limitations be interposed. It does not appear that the note was ever paid or otherwise discharged. The purpose of a judgment is to establish the indebtedness and decree its payment. The original indebtedness is confessed and is not shown to have been paid, nor does it appear that the complainant ever made inquiry as to the whereabouts of the note. Under such circumstances, it would be manifestly against equity to relieve against this judgment upon the proofs.

The testimony seems to have been taken to meet the case as though it had been well stated in the bill, and if it had appeared by the testimony that the complainant was entitled to relief, we might direct that the bill be amended to conform to the case proved, but as this does not appear, our judgment is that the decree must be reversed and the bill dismissed.

HART, J., delivered the following opinion of the court, upon a petition for rehearing which was filed herein.

Appellee petitions for a rehearing, on the ground that the affidavit of H. R. Edwards and O. H. Gadsden, stating in substance that the note in question was settled, as alleged in the bill, in 1838 or 1839, referred to in the bill as exhibit B, and as being on file, was not sent up in the record, and this court has had no opportunity of examining it.

It appears that this affidavit was amongst the papers of the case, in the office of the Clerk of the Circuit Court in Jefferson county, but had no file mark and was not copied into and sent up in the record to this court. The substance

of it is set forth in the bill, and the complainant was examined as a witness and had the benefit of his testimony.

It does not appear that the affiants were examined as witnesses to prove the statements in their affidavit, (which itself could be of no avail as evidence at the hearing,) and can be of no use here now. The complainant had his opportunity to take their testimony and have the benefit of it, and it does not appear that he did so.

Rehearings and new trials are allowed for the purpose of correcting the mistakes and misapprehensions of the court. Nothing of this kind appears or is suggested in this proceeding. It is not a safe or tolerable practice to grant rehearings for the purpose of allowing a new case to be made by an amendment to the bill, and new testimony to be taken to meet the new case thus presented. The form of our decree was dictated by the absence of such proofs as would have entitled the complainant to relief.

No good cause is seen for granting a rehearing, and it must be refused.